842 F.2d 710
 James BENNERSON and Vivian Bennerson
v.
Beresford and Marie SMALL
v.
FRANK WEISNER REAL ESTATE COMPANY and as Agent for William
Ephraim and Frank Weisner, Personally and Eileen Morris Real
Estate and Eileen Morris Personally and as Agent for William
Ephraim and William Ephraim.
Appeal of James BENNERSON and Vivian Bennerson.
 No. 87-3105.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 8, 1987.
Decided March 30, 1988.
 
 Richard D. Keeling (Argued), Christiansted, St. Croix, V.I., Ann L. Hardy, Richmond, Va., for appellants.
 Amelia Headley LaMont (Argued), Richard Austin, Legal Services of Virgin Islands, Christiansted, St. Croix, V.I., for appellees.
 Before GIBBONS, Chief Judge, and STAPLETON and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal from a final order of the appellate division of the district court of the Virgin Islands, we are asked to determine, once and for all, title to a certain parcel of property, Plot 63-R, in Estate Whim, St. Croix, held by James and Vivian Bennerson, but with a recent deed recorded to Beresford and Marie Small.
 
 
 2
 On a previous appeal involving this and many other parcels in Estate Whim, we remanded to the district court to determine which of the parcels were fraudulently transferred. In those instances where the property owner was estopped by the Restatement (Second) of Agency from asserting the Statute of Frauds, the district court found that good title passed. Other conveyances, however, were deemed void because the deeds evidencing those transfers were forged.
 
 
 3
 In this appeal we hold that since one cannot take legal title through a forged deed, the Smalls' title was void. Alternatively, we find that the Smalls had notice of a pending lawsuit concerning the true state of the title to the land and thus were not entitled to the protections afforded to bona fide purchasers.
 
 
 4
 We are not unsympathetic to the equities favoring the Smalls in this case and they are not without recourse. Accordingly, we will reinstate the judgment awarded by the territorial court permitting the Smalls to recover on their claim for unjust enrichment against the owners of the property.
 
 I.
 
 5
 Eugene and Antoinette Bennerson, husband and wife, owned certain plots of land located in Estate Whim, Frederiksted, St. Croix. After Eugene's death in 1965, the property passed to Antoinette, who in later years, conveyed the property to James and Vivian Bennerson, the plaintiffs in this lawsuit.
 
 
 6
 One Henry Joseph was raised by Eugene and Antoinette Bennerson since childhood and, after having been away for a number of years, he resumed residence in Eugene and Antoinette Bennerson's house. After Eugene's death, Joseph began to sell certain parcels of Antoinette Bennerson's land in Estate Whim. The land was subdivided and sold to a number of different persons between 1966 and 1972. In 1973, suit was instituted in the district court against Joseph by Antoinette Bennerson to set aside these conveyances, restore her title to the land and for an accounting of the monies owed. Antoinette claimed that the deeds from Joseph to the various grantees were fraudulent because she did not sign them, they were not signed at her direction, and Joseph did not have written authority to sell the land on her behalf. An amended complaint, naming as defendants the individual grantees on the alleged fraudulent deeds, was subsequently filed. The case was referred to a special master who found that Antoinette Bennerson had appointed Joseph as her agent to sell the land. She was thereby estopped from claiming fraud concerning the transfers from Joseph to the various grantees. The master's findings and conclusions of law were confirmed and adopted by the district court.
 
 
 7
 We reversed, Bennerson v. Joseph, 583 F.2d 633 (3d Cir.1978), and remanded to the district court. We instructed the court to conduct an evidentiary hearing for the purpose of making precise findings of fact regarding the estoppel issue relative to each individual grantee.
 
 
 8
 On July 2, 1981, the district court issued its opinion on remand. There, as previously mentioned, the court found that some of the conveyances by Joseph were void and others passed good title. In the latter instances, the court found that during the mid-sixties and early seventies Antoinette had held out Joseph as her "man of business," a local colloquialism analogous to one having a power of attorney. Antoinette's representation, coupled with reliance on the Restatement (Second) of Agency Sec. 8B (1958), led the court to conclude that Joseph possessed authorization to sell the land on her behalf. Antoinette was thereby estopped from asserting the otherwise available Statute of Frauds defense concerning these specific transactions.
 
 
 9
 One of the conveyances at issue in the Joseph litigation was the May 19, 1972 sale of Plot 63-R, from Joseph to William Ephraim, the realty in question before us now. Although named as an individual defendant and duly served with notice of the Joseph lawsuit, Ephraim neither answered nor appeared in that action.
 
 
 10
 While the suit was pending, in August 1977, Beresford and Marie Small, through the Frank Weisner Real Estate Company, entered into a land purchase contract to acquire Plot 63-R. They were informed that the owner of the land was William Ephraim. By the terms of the contract, after providing a down payment, the Smalls were required to make monthly payments. No deed was to be delivered until payment had been made in full.
 
 
 11
 A few months after entering into the contract, and with approval of the real estate company, the Bennersons began to build a dwelling on the property. In August 1978, during the course of the construction, a notice was placed on the property which read:
 
 
 12
 Please note this property is in court litigation. No one is allowed to build while the courts have jurisdiction. On behalf of Mrs. Antoinette Bennerson.
 
 
 13
 After discovering the note on the property, the Smalls contacted the real estate agency and questioned it concerning the note. There they were informed that the title examination had not indicated that the property was the subject of any litigation.[1]
 
 
 14
 The Smalls then checked with the recorder of deeds office and their examination of those records did not uncover any restriction against Ephraim's deed. The Smalls then confronted the source of the note, the Bennersons. Mr. Bennerson confirmed that there was litigation concerning the property, yet was not forthcoming with specific details.
 
 
 15
 The Smalls next contacted Attorney Edward Ocean, who represented Antoinette Bennerson in the lawsuit against Joseph. They were informed that Mr. Ocean would not discuss the matter with them because he represented the Bennersons. Subsequent to the visit to Ocean's office, the Smalls went to the office of the territorial court. The record is unclear as to the extent of information, if any, received by the Smalls at this location. The final leg of the Smalls' quest for information found them at the local office of Legal Services where they apparently made further inquiry concerning the state of the title.
 
 
 16
 In August, 1978, a notation on the Smalls' payment card in the real estate office was made:Will not make any more payments, claims in court proceeding and Ephraim doesn't own.
 
 
 17
 Nonetheless, in October 1978, the Smalls paid the $4,736.74 balance due on the land purchase contract. Sometime in the month thereafter, a deed was sent to William Ephraim for signature. The deed was not returned so a second deed was forwarded. This deed was signed by Ephraim and returned at the end of December. Court records reveal that Ephraim was served with notice of the Bennerson v. Joseph action on December 11, 1978. The deed from Ephraim to the Smalls was recorded on February 13, 1979.
 
 
 18
 On July 2, 1981 the district court entered the default judgment against William Ephraim in the matter of Bennerson v. Joseph. Acknowledging the possibility that subsequent purchasers who had not participated in the litigation may exist, the court included the following conditional language in its opinion:
 
 
 19
 Since there was no evidence presented as to whether these defendants [those against whom a default judgment was entered] had sold their interest in the subplots at the time of the action, the default judgment will apply only to the named defendants. It may be that bona fide purchasers have purchased some of these plots without notice of this action or even before this action was commenced. A separate action against such purchasers will be necessary to attack their interest, since they will have received no notice or opportunity to defend.
 
 
 20
 Bennerson v. Joseph, on remand, No. 74/145 (District Court of the Virgin Islands), slip op. at 15-16.
 
 
 21
 After judgment had been rendered against Ephraim, the Bennersons delivered a notice asking the Smalls alternatively to pay $180.00 a month in rent or to vacate the premises. No payments were made; accordingly, this action for back and future rents and restitution of the premises was filed in the territorial court by the Bennersons.
 
 
 22
 The Smalls filed an answer raising the affirmative defense of their status as a bona fide purchaser.[2] The Smalls also counterclaimed, requesting the court to quiet title in their favor or to award compensation for the unjust enrichment which would accrue to the Bennersons if awarded possession of or allowed to collect rent for the dwelling constructed by the Smalls.
 
 
 23
 After a bench trial, the territorial court found that the Smalls had notice of the pending action involving the property before they completed their purchase. The territorial court then found the Bennersons to be entitled to possession of the premises but denied the request for back rent, believing the equities to militate against such an award. The court further denied the Smalls their quiet title counterclaim, but did conclude that recovery on the unjust enrichment claim was warranted in a sum representing taxes paid and improvements made to the property.
 
 
 24
 On appeal, the appellate division reversed and remanded, concluding that the Smalls had overcome the presumption of notice and were bona fide purchasers of the property. The matter was remanded for entry of judgment in favor of the Smalls' counterclaim. This appeal from the final judgment of the appellate division followed. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1948) and 48 U.S.C. Sec. 1613a(c) (1985).
 
 
 25
 Our main issue on review deals with interpretation of legal precepts invoking our plenary review power. Alternatively, we focus on the mixed question of law and fact of whether the Smalls were bona fide purchasers of Plot 63-R, relieved from the effects of the prior adjudication. In such instance, we separate the issue into its respective parts, applying the clearly erroneous standard to the factual component and plenary standard to the legal component. Ram Construction Co., Inc. v. American States Insurance Co., 749 F.2d 1049 (3d Cir.1984).
 
 II.
 
 26
 We begin our discussion with the age-old maxim that a forged deed cannot pass good title to anyone, not even a bona fide purchaser for value. Hockett v. Larson, 742 F.2d 1123 (8th Cir.1984). If a purchaser or grantee from a forger can claim legal title, it can only be by reason of estoppel of the grantor to claim invalidity. See generally, III American Law of Property Secs. 12.58 (forged deed); 15.17 (estoppel to challenge forged deed) (1952).
 
 
 27
 Here the Smalls claim in essence that the question of whether Joseph was a forger in the transaction to Ephraim, their grantor, was undecided or decided in their favor since the district court held the effect of the default judgment to apply only to Ephraim and not to subsequent purchasers from him. The opinion of the district court, a part of record evidence in the litigation now before us, adjudicated the validity of the conveyance of Plot 63 from Joseph to himself (Joseph having admitted at the hearing before the master that he signed Antoinette Bennerson's name on the deed) and decided that the transfer was void. The district court also found that no estoppel would operate against Antoinette concerning this conveyance.
 
 
 28
 While we recognize that the district court attempted to apply its rejection of the Statute of Frauds defense only to specified grantees and intended to leave open the impact of its decision upon subsequent purchasers such as the Smalls, we hold that the district court's conditional language could not elevate the Smalls' standing to a position better than that of their defaulting grantor. Ephraim simply was a tainted link in a defective chain of title. He took title via a forged deed and in accordance with the district court's judgment, not in circumstances giving rise to an estoppel against the grantor.[3] Therefore, the Smalls' subsequent attempt to acquire good title emanating from this illegal deed is unsuccessful.
 
 III.
 
 29
 The alternative rationale for our holding recognizes that the property rights accruing to the Smalls were in large part dependent upon the outcome of the Bennerson v. Joseph litigation. In our opinion remanding to the district court, 583 F.2d at 641, we noted that most of the grantees in whose favor judgment had been entered (William Ephraim included) did not appear in the action heard by the special master. Accordingly, we instructed the district court: "The rights of the remote grantees ... depend entirely upon the circumstances giving rise to estoppel in favor of the immediate grantees."
 
 
 30
 This language, in conjunction with the law concerning forged deeds, and the Restatement of Judgments would have resulted in a summary disposition of this matter, if the district court had not included the aforementioned conditional language concerning subsequent purchasers. Because the parties focused their attention on this exception and the courts did likewise, we feel compelled to address the Smalls' argument that they were members of this class of subsequent grantees without notice and are thereby relieved from the effect of the default judgment.
 
 
 31
 The Bennersons argued that the appellate division failed to apply the proper legal standard in reviewing the territorial court's "ultimate factual determination" that the Smalls had notice of the pending lawsuit concerning title to Plot 63. They cite Krasnov v. Dinan, 465 F.2d 1298 (3d Cir.1972), as dispositive of the proper analysis which the appellate division should have utilized, but failed to do so, in its review of the territorial court's decision. In Krasnov we held:
 
 
 32
 It is the responsibility of an appellate court to accept the ultimate factual determination of the factfinder unless that determination ... is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data.
 
 
 33
 Id. at 1302.
 
 
 34
 The Bennersons assert that the territorial court made an ultimate factual determination that the Smalls were not bona fide purchasers without notice and that this determination was fully consistent with the evidence presented. They claim that the appellate division was without authority to disturb this ultimate determination in reaching its contrary conclusion that the Smalls were bona fide purchasers.
 
 
 35
 What is misplaced about the argument is that the issue here, i.e., did the Smalls have notice of the pending lawsuit serving to deny them protections of bona fide purchaser status, is a mixed question of law and fact,[4] or alternatively, as defined in Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981), an ultimate fact, and not, as discussed in Krasnov, an ultimate factual determination. In its recital of the facts, the appellate division did not deviate from the territorial court's findings, rather it arrived at a different legal conclusion based upon these same facts. Since there was no disruption of the factual component, we are not compelled to apply the clearly erroneous review to the appellate division's findings and the same remain intact.
 
 
 36
 What does remain to be determined is the legal component of the notice issue.
 
 
 37
 Definitions of the term "notice" and the various legal consequences abound. See United States v. Certain Parcels of Land, 85 F.Supp. 986 (S.D.Cal.1949); Hoult v. Rich, 161 Kan. 587, 170 P.2d 834 (1946). Our specific inquiry, however, can be focused on ascertaining whether the Smalls had notice which would have satisfied a reasonably prudent purchaser that there was no defect in the title sought to be acquired. This type of notice has been labeled as "actual implied" notice. Hoult v. Rich, id.
 
 
 38
 In their conflicting determinations of the notice question, the discrepancy in the two courts' holdings is marked by their varying conclusions concerning the degree of diligence undertaken by the Smalls to discover the true state of the title of Plot 63-R. The territorial court decided that the Smalls, in order to establish successfully bona fide purchaser status,[5] must demonstrate that they knew of no facts sufficient to put them on notice as to the Bennersons' claim either at the time of purchase or before they paid the balance of the purchase price. In the context of actual implied notice, the court held that if the Smalls had knowledge of circumstances which, in the exercise of common sense and prudence ought to put a person on particular inquiry, they will be presumed to have made that inquiry, and will be charged with notice of every fact which would in all probability have been revealed had such an inquiry been undertaken. Jaramillo v. McLoy, 263 F.Supp. 870, 876 (D.C.Col.1967). The court then noted that no uniform standard of diligence to be employed in pursuing the inquiry exists; rather the purchaser must employ the diligence which the situation dictates. Carter v. Converse, 550 S.W.2d 322 (Tex.Civ.App.1977). Reviewing the particular facts here, the territorial court stated that the Smalls should have made inquiry at the district court office and should also have requested additional information from the Bennersons concerning the litigation. The territorial court concluded that the failure to pursue this further inquiry precluded satisfaction of the Smalls' due diligence responsibility and denied them bona fide purchaser status.
 
 
 39
 To the contrary, the appellate division found the record to be replete with convincing evidence that the Smalls conducted a good faith diligent inquiry as defined by caselaw. See, e.g., Pipkin v. Ware, 175 S.W. 808 (Tex.Civ.App.1915). It opined that the Small's inability to discern the crucial facts concerning the pending litigation did not result from their lack of diligence, but rather emanated from incomplete and misleading information received from the various points of inquiry.
 
 
 40
 We hold that the appellate division misapplied the law of due diligent inquiry to the uncontested facts. As stated in Loomis v. Cobb, 159 S.W. 305 (Tex.Civ.App.1913):
 
 
 41
 Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success.... [I]f he shows by convincing evidence that he did make the inquiry, and did prosecute it with all care and diligence required of a reasonably prudent man, and that he failed to discover the existence of, or to obtain knowledge of, any conflicting claim ... then the presumption which has arisen against him will be completely overcome; ....
 
 
 42
 Id. at 308. The cases cited by the appellate division as the basis for its due diligence finding uniformly required that the end result of the inquiry was that sufficient information had been ascertained to satisfy a reasonably prudent person that there was no defect in the title. This situation simply did not occur here. We do not dispute that the Smalls conducted significant legwork in their quest for information; however, we find that at the search's conclusion what remained at best were more questions. The Smalls uncovered no information which could reasonably have led them to believe that they were clear to proceed with the sale. What the Smalls did, in fact, obtain was direct knowledge of a conflicting interest; what remained to be discovered were the specifics of that conflict. Their own directive to the real estate company, i.e., the refusal to make more payments because of a court proceeding, is further indication that they possessed sufficient information to experience trepidation concerning finalizing the purchase. We conclude that the extent of the Smalls' knowledge of the ongoing litigation serves to deny them bona fide purchaser status, and the contrary legal conclusion of the appellate division must be reversed.
 
 
 43
 Because we have found that the Smalls had actual implied notice that there was a potential defect in the title, we need not address the Bennersons' second argument that the note they attached to the construction site could be construed as "actual express" notice. See Hoult v. Rich, id.
 
 IV.
 
 44
 We need not address the Bennersons' third argument regarding the application of principles of lis pendens and various statutory provisions of the Virgin Islands Code to this matter since it was raised in the improper context of a request to review the territorial court's refusal to grant summary judgment on the Bennersons' behalf. The Bennersons claim that, although they prevailed before the territorial court, if the legal precept of lis pendens had been properly applied at the summary judgment level, they would have been spared the expense of a trial. Denial of summary judgment in this matter is now moot and not subject to our review.
 
 V.
 
 45
 We have acknowledged that the Smalls are entitled to partial recovery on their counterclaim concerning certain rights to Plot 63-R. Although the territorial court denied the Smalls' quiet title request, consistent with its power to grant equitable relief, the court did allow recovery for unjust enrichment for taxes paid and improvements made by the Smalls. On appeal of the territorial court's decision, the appellate division reversed and remanded for entry of judgment in favor of the Smalls' quiet title counterclaim, abrogating the question of unjust enrichment.
 
 
 46
 In the Bennersons' appeal to this court, they have requested that we reverse the appellate division and reinstate the territorial court's judgment, without challenge to the unjust enrichment award. Accordingly, we will reverse the judgment of the appellate division and reinstate the judgment of the territorial court as stated.
 
 
 
 [1]
 A third party complaint against the agency and its employees was dismissed by stipulation on July 19, 1985
 
 
 [2]
 The Smalls also alleged as a second affirmative defense that the Bennersons were not the owners of Plot 63-R. The ownership issue also served as the basis for the Smalls' motion to dismiss. This argument was not addressed on appeal
 
 
 [3]
 The Smalls made no effort in this case to show that the conveyance to Ephraim was under circumstances giving rise to an estoppel against Antoinette Bennerson. Accordingly, we have no occasion to reach the Bennersons' argument that the Smalls are bound by the judgment against Ephraim and the determinations upon which it rests
 
 
 [4]
 We note that the Bennersons themselves in a later argument acknowledge that the issue of notice is such a question. Brief for Appellant at 32
 
 
 [5]
 The territorial court outlined the elements of a bona fide purchaser by reference to 92 C.J.S. Vendors and Purchasers Sec. 320 et seq. (1955). Absent contrary law or a provision in the American Law Institute's Restatements of the Law, the common law as generally understood in the United States is the law in the Virgin Islands. V.I.Code Ann. Title 1, Sec. 4 (1967). No Virgin Islands law or Restatement provision has been brought to our attention concerning the requirements of a bona fide purchaser. Thus we look to general rules regarding the requisite elements. See American Home Assurance v. Sunshine Supermarket, 753 F.2d 321 (3d Cir.1985)