PHOENIX ENGINEERING AND
SUPPLY INC., Plaintiff–
Appellee,

v.

UNIVERSAL ELECTRIC COMPANY,
INC., Defendant–Appellant.

No. 95–15518.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1996.

Decided Jan. 9, 1997.

Jerry E. Hogan and Jacques–Alain G. Bronze, Hogan & Link, Agana, Guam, for defendant-appellant.

John C. Dierking, Agana, Guam, for plaintiff-appellee.

Before: WALLACE, SCHROEDER, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Universal Electric Company, Inc. ("Universal") appeals from the judgment of the District Court of Guam, Appellate Division ("Appellate Division"). The Appellate Division affirmed the Superior Court of Guam's ("Superior Court") award of the unpaid amount due on account and prejudgment interest to Phoenix Engineering and Supply Inc. ("Phoenix"). The Appellate Division also affirmed the Superior Court's dismissal of Universal's counterclaim for damages due to breach of contract. Universal seeks reversal of the award of prejudgment interest because it was awarded improperly on an "open account" and there was no agreement between the parties to pay interest. Universal argues that the dismissal of its counterclaim should be reversed because the Superior Court's finding that Phoenix did not breach its contract with Universal was clearly erroneous and because the Superior Court erred by invoking the statute of frauds. We affirm the decision of the Appellate Division upholding the award by the Superior Court of prejudgment interest because we conclude that Guam law provides for prejudgment in-

terest on amounts due under a contract. We also affirm the Appellate Division's judgment affirming the dismissal by the Superior Court of Universal's counterclaim because we conclude that it did not clearly err in finding that Phoenix did not breach its contract with Universal. Accordingly, we do not reach the question of the timeliness of the notice of breach, or whether the Appellate Division erred in affirming the Superior Court's ruling that Universal's counterclaim was barred by the statute of frauds.

## I.

We summarize the facts in the light most favorable to Phoenix as the prevailing party at trial. *See United States v. Oba,* 978 F.2d 1123, 1129 (9th Cir.1992) (holding that evidence is viewed in the light most favorable to the party who prevailed at trial). Universal is an electrical contractor with offices in the Territory of Guam. Phoenix is a vendor of commercial electrical fixtures and materials with offices in New Jersey. From 1986 to 1992, Universal contracted with Phoenix to supply materials and custom-made fixtures on various projects. When Universal bid on a contract, it provided Phoenix's agent in Guam with a bill of materials.[1] Phoenix's agent would then transmit the bill of materials to Phoenix. Upon receipt of the bill of materials, Phoenix would prepare a price quotation for Universal for its use in support of its bid. If Universal was awarded the contract, it would transmit a purchase order to Phoenix. In response, Phoenix would prepare a submittal of materials and manufacturers for presentation by Universal to the contracting party. Upon receipt of the approved submittals from Universal, Phoenix would order the listed materials.

In June 1988, the United States Navy awarded a contract to build six potable water wells ("the Navy project") to Marianas Drilling, Inc. ("MDI") as prime contractor. MDI selected Universal to act as the subcontractor to provide labor, materials, and equipment for the electrical work on the Navy project.

Universal entered into an agreement with Phoenix that it would supply the materials needed on the Navy project. After Universal was awarded the contract, but before receiving a purchase order, Phoenix accommodated Universal's request for submittals for two of the well sites. The Navy approved the submittals. Universal gave the submittals to Phoenix's agent on September 19, 1988. The agent then forwarded the submittals to Phoenix on September 22, 1988. Universal told Phoenix to proceed with ordering the materials for the two sites. The president of Phoenix told Phoenix's agent in Guam that it would not proceed without a purchase order. Phoenix did not receive a purchase order and a complete bill of materials for the Navy project until December 1, 1988. The purchase order was backdated to July 5, 1988. Universal informed the Navy that the purchase order was submitted to Phoenix on July 5, 1988.

In February 1989, MDI asked Phoenix to rush the order because of the approaching completion deadlines for the Navy project. In order to accomplish this request, Phoenix had to substitute materials. Phoenix prepared new submittals for Navy approval. The Navy approved all of the substituted materials and either used them in the Navy project or kept them for future use. Universal did not meet the Navy project completion deadlines. Most of the materials arrived in Guam between February 1989 and August 1989. One shipment of minor special-order items arrived in October 1989.

Universal failed to pay Phoenix for the materials supplied for the Navy project and others between 1989 and 1992, despite numerous demands from Phoenix. In 1993, Phoenix filed a complaint in the Superior Court for the unpaid amount plus prejudgment interest. Universal filed a counterclaim for damages resulting from the late delivery of materials for the Navy project. Universal used the $76,650 in liquidated damages assessed against it by MDI for the failure to meet the Navy's deadlines as the measure of the damages caused by Phoenix's alleged breach.

---

**1.** A bill of materials is the contractor's list of all materials needed to complete a project.

After a bench trial, the Superior Court adopted Phoenix's proposed findings of fact and conclusions of law. The court awarded Phoenix $203,901.97, as the amount due on its contracts with Universal, and $66,202.41 in prejudgment interest. The court also dismissed Universal's counterclaim.

In its appeal to the Appellate Division, Universal contended that the Superior Court erroneously awarded prejudgment interest because the parties did not agree that Universal was obligated to pay interest on late payments and because Guam law does not provide for prejudgment interest on an "open account." Universal contended that the Superior Court clearly erred in finding that Phoenix timely delivered the Navy project materials and that Universal accepted the goods without giving notice of breach. Universal also contended that the Superior Court erred by invoking the statute of frauds to dismiss its counterclaim. The Appellate Division held that the Superior Court's findings were not clearly erroneous and that it did not err by awarding prejudgment interest and dismissing the counterclaim.

### II.

Appeals from the Superior Court of Guam are determined by the Appellate Division of the District Court of Guam. 48 U.S.C. § 1424–3(b). Final decisions of the Appellate Division are reviewed by the United States Court of Appeals for the Ninth Circuit. 48 U.S.C. § 1424–3(c). We have previously concluded that we must apply the *de novo* standard of review to the Appellate Division's interpretation of Guam law. *People of Territory of Guam v. Yang,* 850 F.2d 507, 509–11 (9th Cir.1988) (en banc).

We have not yet been called upon to determine our standard of review regarding the Superior Court's findings of fact. The Appellate Division concluded that the Superior Court's factual findings were not clearly erroneous. In *Yang,* we noted that adoption of the *de novo* standard of review for questions of local law "prevents our applying a standard of review in conflict with that applied by the Third Circuit in its review of Appellate Division decisions of the District Court of the Virgin Islands." 850 F.2d at 510.

In *Bennerson v. Small,* 842 F.2d 710 (3d Cir.), *cert. denied,* 488 U.S. 845, 109 S.Ct. 121, 102 L.Ed.2d 94 (1988), the Third Circuit held that it was required to use the clearly erroneous standard in reviewing the determinations of the Appellate Division regarding the territorial court of the Virgin Island's findings of fact. *Id.* at 713. We agree with the Third Circuit. As an appellate court, the Appellate Division cannot make findings of fact. Thus, the only manner in which we can determine whether the Superior Court erred in its findings of fact is to review them for clear error. If the Superior Court did not clearly err in its findings of fact, then we must affirm the judgment of the Appellate Division.

### III.

During oral argument, counsel for Universal contended that the Superior Court's findings of fact were unclear and ambiguous. Under Guam law, a party may file a motion to amend or clarify a trial court's findings of fact. Guam R.Civ.P. 52(b). Universal failed to move for amendment or clarification of the findings adopted by the Superior Court. An appellant may not challenge the specificity of the court's findings if he or she failed to make a motion for more specific or additional findings. *Reliance Fin. Corp. v. Miller,* 557 F.2d 674, 681–82 (9th Cir.1977). Accordingly, we do not review Universal's challenge as to the clarity or accuracy of the findings.

### IV.

Universal contends that "close scrutiny" of the record is required because the Superior Court adopted Phoenix's proposed finding of facts. We agree. When a trial court adopts a party's proposed findings, "the clearly erroneous standard applies, although 'close scrutiny' of the record is appropriate." *Kern Oil and Refining Co. v. Tenneco Oil Co.,* 792 F.2d 1380, 1386 (9th Cir. 1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). Consistent with this principle, we have closely scrutinized the record.

## V.

■ Universal contends that the Appellate Division erred in affirming the Superior Court's award of prejudgment interest to Phoenix because the parties did not agree that Universal was obligated to pay interest on late payments and Guam law does not provide for prejudgment interest on an "open account."[2] We review *de novo* the Appellate Division's interpretation of Guam law. *Yang*, 850 F.2d at 511.

Universal argues that we must reverse the Appellate Division's judgment because the Superior Court erroneously relied on Guam Civil Code § 1916a as authority for the award of prejudgment interest. Section 1916a establishes a six percent rate of interest for both post-judgment and prejudgment interest.[3] Section 1916a sets the rate of prejudgment interest. It does not purport to authorize an award of prejudgment interest. The Superior Court erred by citing § 1916a to support its award of prejudgment interest. The record, however, supports an award of prejudgment interest under Guam Civil Code § 3287.

Guam Civil Code § 3287 provides for prejudgment interest on damages that "are certain, or capable of being made certain by calculation."[4] While the Guam courts have not interpreted this standard, Guam Civil Code § 3287 is identical to language contained in California Civil Code § 3287(a). When a Guam statute is based upon its California counterpart and "where Guam law is unclear, California cases 'are persuasive.'" *People of Territory of Guam v. Borja*, 732 F.2d 733, 735 (9th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 300, 83 L.Ed.2d 235 (1984) (quoting *Roberto v. Aguon*, 519 F.2d 754, 755 (9th Cir.1975)).

Prejudgment interest is allowed under California Civil Code § 3287 where the amount due is readily ascertainable or fixed by the terms of a contract. *Leaf v. Phil Rauch, Inc.*, 47 Cal.App.3d 371, 120 Cal.Rptr. 749, 751 (1975); *see also Pacific States Steel Corp. v. Isaacson Iron Works*, 320 F.2d 645, 655 (9th Cir.1963) (holding that parties ascertain the amount due under a contract when they enter into the contract).

■ Here, the contracts consisted of invoices accompanied by bills of lading. These contracts contained fixed and certain terms concerning the amounts due. The record shows that Universal was able to determine the amount due Phoenix, as evidenced by account reconciliations that it prepared for internal reporting purposes. Therefore, we conclude that the Appellate Division did not err in affirming the Superior Court's award of prejudgment interest to Phoenix because under Guam law such an award is authorized if the amount owed is readily ascertainable.

## VI.

■ Universal appears to argue that the Superior Court's finding that Universal was obligated to pay Phoenix within a thirty day time period is clearly erroneous. Our review under the clearly erroneous standard allows great deference to the trial court. *Concrete Pipe & Prods. of California, Inc. v. Construction Laborors Pension Trust*, 508 U.S. 602, 623–25, 113 S.Ct. 2264, 2279–81, 124 L.Ed.2d 539 (1993). "If the [trial court's] account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

2. Universal has abandoned the contention, raised before the Appellate Division that the award of $203,901.97, for the amount owing for the materials supplied by Phoenix pursuant to Universal's purchase orders, was clearly erroneous.

3. Guam Civil Code § 1916a states, in pertinent part:. "The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the territory, shall be six percent (6%) per annum...."

4. Guam Civil Code § 3287 states, in pertinent part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him, upon a particular day, is entitled also to recover interest thereon from that day...."

■ The Superior Court found that payment was due "30 days after the date of each invoice." The record shows that Universal's purchase orders provide that payment is due "30 days after the receipt of order." Phoenix's president testified that payment was due thirty days after the materials arrived in Guam. The record shows that shipments of materials took approximately forty-five days to reach Guam from the United States mainland. Contrary to Universal's argument, the contracts between Universal and Phoenix included specific payment terms. The Superior Court's finding that payment was due "30 days after the date of each invoice," however, was clearly erroneous because it did not include the correct payment terms of "30 days after the receipt of order." We do not reverse a trial court's erroneous finding unless it "affect[s] the substantial rights of the parties." 28 U.S.C. § 2111; Fed.R.Civ.P. 61. " '[T]he burden of showing that prejudice has resulted' [from the error] is on the party claiming injury from the erroneous rulings." *NLRB v. Lee Office Equip.*, 572 F.2d 704, 708 (9th Cir.1978) (quoting *NLRB v. Seine & Line Fishermen's Union*, 374 F.2d 974, 981 (9th Cir.1967)).

■ In calculating the amount of prejudgment interest that should be awarded, an independent accounting firm allowed for fluctuations in the average shipping time of deliveries to Guam by starting the calculation sixty days, instead of thirty days, after the invoice dates. Universal has not challenged the calculation of prejudgment interest and has offered no evidence to demonstrate that it was prejudiced by the Superior Court's erroneous finding. Accordingly, Universal has failed to demonstrate that it was prejudiced by the court's erroneous finding.

## VII.

Universal argues that the Superior Court erred by finding that Phoenix did not breach the Navy project contract because: 1) Phoenix failed to order the project materials when it received the approved submittals and instructions to proceed from its agent in Guam; 2) Phoenix failed to deliver the project materials in a timely manner; 3) Universal did not accept delivery of the nonconforming materials; and 4) Universal gave Phoenix notice of its breach due to late delivery.

## A.

■ Universal contends that Phoenix failed to order the Navy project materials in a timely manner. The Superior Court found that Phoenix agreed to order the Navy project materials when it received the purchase order on December 1, 1988. Universal maintains that the parties had a history of prior dealings in which Phoenix ordered materials before receiving a purchase order. Phoenix received approved Navy submittals for two of the five well sites on September 22, 1988. Universal contends that Phoenix breached its agreement by waiting to receive the purchase order before ordering the materials.

The record reveals conflicting testimony regarding whether the parties had agreed that Phoenix would order materials prior to receiving a purchase order. The evidence is undisputed that Phoenix received the purchase order and complete bill of materials for the Navy project materials on December 1, 1988. The president of Phoenix testified that there was no agreement or practice to order materials prior to receiving a purchase order and bill of materials. He also testified that he did not agree to order the materials for the Navy project upon receiving the approved submittals. He further testified that while he was willing to provide minor items without a purchase order, specially manufactured parts that involved an outside manufacturer were not ordered without a purchase order because of the "sizable amount of money" involved. Viewing the evidence in the light most favorable to Phoenix, we hold that the Superior Court's finding that a purchase order was required before materials were ordered was not clearly erroneous.

## B.

■ Universal contends that even if Phoenix did not agree to order the materials until it received the purchase order on December 1, 1988, Phoenix breached the contract by not delivering all of the materials until October 1989. The record shows that many of the items ordered by Universal had

to be specially manufactured, requiring twelve to sixteen weeks to fabricate. The industry-wide annual holiday factory close down caused an additional delay of three weeks. Once manufactured, it took approximately forty-five days for the materials to reach Guam from the United States mainland. The president of Universal testified that he understood that the specially manufactured items would take six months from the order date to reach Guam. Additionally, Phoenix agreed to accommodate MDI's emergency requests by supplying substitute materials on a "crash" order basis. The Navy had to approve additional submittals for these substitute materials, causing further delay in the delivery. Because of the administrative obstacles involved in the production and procurement of the materials, they began arriving in Guam on February 1989. The final shipment arrived in October 1989. Universal has failed to demonstrate that the Superior Court's finding that delivery of the materials was made in a timely manner is clearly erroneous.

### C.

Universal contends that it never accepted the substitute materials because it informed Phoenix that the Navy refused to approve the materials without new submittals. Acceptance occurs when the buyer "[f]ails to make an effective rejection" after the buyer "has had a reasonable opportunity to inspect [the goods]." 13 G.C.A. § 2606(1)(b). Informing Phoenix that the Navy required new submittals before approving the materials does not demonstrate that Universal rejected the substituted materials. Instead, it only alerted Phoenix to the fact that Universal required a new submittal in order to gain Navy approval. Additionally, the record indicates that the Navy approved all of the substituted materials, once the proper submittals were provided. Viewing the evidence in the light most favorable to Phoenix, the Superior Court's finding that Universal accepted the substitute materials was not clearly erroneous.

### D.

Universal contends that the Superior Court erred in finding that it did not give

Phoenix timely and reasonable notice that it had breached its contract because the materials were not delivered in a timely manner. Because we conclude that Phoenix did not breach its contract with Universal, we do not reach the question of the timeliness of the notice of breach.

### VIII.

Universal contends that the Superior Court erroneously invoked the statute of frauds to deny its counterclaim for damages due to late delivery of the Navy project materials. We do not reach this question because of our determination that the Superior Court did not clearly err in finding that Phoenix did not breach its contract.

**AFFIRMED.**