Alan F. **HAEUSER,** Petitioner,

v.

**DEPARTMENT OF LAW,** Government of Guam, Civil Service of Guam, Respondents.

No. 02–72249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Filed May 24, 2004.

Mitchell F. Thompson, Maher & Thompson, P.C., Hagatna, Guam, for the petitioner.

Eric A. Heisel, Assistant Attorney General, Hagatna, Guam, for the respondents.

Before: REINHARDT, THOMAS and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge:

This case requires us to consider both the timing and the nature of our review of a decision of the Supreme Court of Guam. Specifically, this case presents the following issues: (1) whether a petitioner must at that time seek our review of a decision by the Supreme Court of Guam when that decision remands the case to the trial court for further substantive determinations, and (2) whether our review of a decision of the Supreme Court of Guam under 48 U.S.C. § 1424–2 requires us to give a degree of deference to a conclusion by the Supreme Court that the trial court erred in its factual findings.

Petitioner Alan F. Haeuser seeks review of a judgment denying him back pay despite his wrongful termination from a position with the Department of Law, Government of Guam ("Department"). The trial court initially found that Haeuser fulfilled his duty to mitigate damages and awarded back pay, but the Guam Supreme Court concluded that this factual finding was clearly erroneous and reversed the award. On remand, the trial court entered a judgment denying Haeuser back pay, and this judgment was affirmed by the Guam Supreme Court.

Haeuser contends that there was sufficient evidence in the record to support a finding that he mitigated damages and that the Guam Supreme Court erred in reversing the trial court's previous award

to him. The Department argues that Haeuser can contest only the Supreme Court's subsequent decision to affirm the Superior Court's actions on remand and is barred from challenging the Supreme Court's earlier decision because Haeuser did not seek review by this court at that time. We conclude that we can properly review the Guam Supreme Court's earlier decision. We further hold that because we must defer to the territorial supreme court on matters of local law, we may reverse the Supreme Court only if it commits manifest error or is inescapably wrong. Because we hold that the Guam Supreme Court committed manifest error in this case in reversing the Guam Superior Court's findings of fact without completing a review of the evidence upon which those finding were based, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This is the second visit by this case to our court. *See Haeuser v. Dep't of Law,* 97 F.3d 1152 (9th Cir.1996). Alan Haeuser obtained a position as an assistant attorney general with the Department in February 1990. Pursuant to 4 Guam Code Ann. § 6208.1, assistant attorneys general were placed in the "unclassified" service and had a two-year probation period during which they could not appeal an adverse employment action to the Civil Service Commission.[1] After fourteen months of employment, the Department terminated Haeuser, citing unsatisfactory job performance. Haeuser timely appealed his dismissal to the Civil Service Commission of Guam, but the Commission refused to hear the matter based on Haeuser's "unclassified" status under § 6208.1.

---

1. In contrast, "classified" employees had a probation period of only three to twelve months; once the probation period passed, specific procedures had to be followed before a "classified" employee could be terminated; and "classified" employees could appeal adverse employment actions to the Civil Service Commission. *See* 4 Guam Code Ann. § 4106.

Haeuser petitioned the Superior Court of Guam, a trial-level court, for a writ of mandate contending, among other things, that the exemption of assistant attorneys from "classified" status violated Guam's Organic Act.[2] The Superior Court denied Haeuser's petition, and the District Court of Guam, Appellate Division affirmed. We reversed that decision and remanded for further proceedings. *See Haeuser,* 97 F.3d at 1161.

On remand, the Superior Court held that Haeuser's termination was wrongful and ordered Haeuser reinstated to his position within the Department. The Superior Court then held a four-day trial to determine whether Haeuser was entitled to back pay for the period that he was unemployed between 1991 and 1997. During these six years, Haeuser submitted eight applications for legal employment in the public sector but was never hired.[3] Haeuser performed some court-appointed work during that time, but his earnings were limited due to his refusal to handle felonies and juvenile cases. Haeuser did not apply for a position either in the private sector or in the federal government, and he did not attempt to open a private

practice separate from the court appointments.

The Superior Court ultimately concluded that Haeuser reasonably mitigated damages and awarded him back pay.[4] With respect to Haeuser's failure to seek employment with Guam's private law firms, the Superior Court stated:

[T]he Court finds that Petitioner's failure to apply for employment with a private law firm ... did not constitute a failure to mitigate his damages which would preclude an award of back pay. The Court is convinced that it is highly unlikely that Petitioner would have been hired to work at a private law firm had he applied based upon his circumstances at the time.... Thus the Court will reject the argument presented by the Respondent herein which suggested that Petitioner intentionally took himself out of the private sector market and thus this constitutes a failure to mitigate.

The Department appealed the Superior Court's decision. By this time, Guam's judicial system had significantly changed. The appeal from the Superior Court no longer went to the District Court of Guam, Appellate Division, but rather to the recently created Guam Supreme Court.[5]

2. The Organic Act, by which Congress established a civil government for Guam, provides in relevant part:

The legislature [of Guam] shall establish a merit system and, as far as practicable, appointments and promotions shall be made in accordance with such merit system. The Government of Guam may by law establish a Civil Service Commission to administer the merit system.

48 U.S.C. § 1422c(a). Pursuant to this provision in the Organic Act, the Guam legislature divided all offices and employment in the government of Guam into classified and unclassified services, and created job protections for classified employees. *See* 4 Guam Code Ann. §§ 4102 et seq.

3. These eight applications included two applications for the same position, prompting the

Guam Supreme Court to state that Haeuser applied to *seven attorney positions* during his unemployment.

4. The Superior Court set off the back pay award against money Haeuser earned from selling cars and from performing court-appointed work. The court deducted additional money from the award because Haeuser did not make an effort to seek court appointments during each year of unemployment.

5. Prior to the establishment of the Guam Supreme Court, cases were appealed from the Superior Court to the District Court of Guam, Appellate Division. *See* 48 U.S.C. § 1424–3. The Appellate Division's final decisions were subject to appeal to the Ninth Circuit. *Id.*

The Justices of the Guam Supreme Court took their oath of office in mid–1995. *See In*

In its 1999 opinion, the Guam Supreme Court began by explaining that a "trial court's findings on mitigation of damages are subject to a clearly erroneous standard of review." *Haeuser v. Dep't of Law* ("*Haeuser I*") (quoting *Sellers v. Delgado College*, 902 F.2d 1189, 1194 (5th Cir. 1990)), 1999 Guam 12, ¶ 14, 1999 WL 257611. The *Haeuser I* court then concluded:

> The fact that Haeuser did not apply at any private law firms immediately raises serious concerns with the trial court's findings. . . . We are unable to find the evidentiary support for the trial court's conclusion that Haeuser would not have been hired by any private law firm. Perhaps, if Haeuser had tried to apply to just one private firm and was not hired, the trial court's conclusion would be plausible, in light of the record. . . . We are left with a definite and firm conviction that the trial court committed a mistake in its conclusions that Haeuser had reasonably mitigated his damages. . . . *We have not conducted a review of the evidence as presented to the trial court,* but rather we have examined the basis of the trial court's conclusions regarding the efforts of Haeuser to mitigate his damages and we find that these conclusions were not plausible in light of the entire record.

*Id.* at ¶ 20–22 (emphasis added). Pursuant to its conclusion that Haeuser had, in fact, failed to make reasonable efforts to find employment, the Supreme Court reversed and remanded the case for findings consistent with its opinion.

On remand, the Superior Court, stating that it was bound by the Supreme Court's holding, reached the conclusion that Haeuser was not entitled to any back pay because he failed to mitigate damages and his failure to mitigate covered the entire period that he was unemployed. Haeuser appealed this decision to the Guam Supreme Court, which affirmed. *See Haeuser v. Dep't of Law* ("*Haeuser II*"), 2002 Guam 8, ¶ 24–26, 2002 WL 1378204. This court then granted Haeuser's petition for writ of certiorari to review the Supreme Court's final decision.

## II. DISCUSSION

### A. Scope of Our Jurisdiction

The Department argues that this court must limit its review to the Guam Supreme Court's ruling in *Haeuser II* because Haeuser's opportunity to seek review of the Supreme Court's ruling in *Haeuser I* has expired. We do not agree. Our jurisdiction to review decisions by the Guam Supreme Court is governed by 48 U.S.C. § 1424–2 which provides that we may "review by writ of certiorari *all final decisions* of the highest court of Guam from which a decision could be had." 48 U.S.C. § 1424–2 (emphasis added). Because our jurisdiction is limited to "final decisions" by the Guam Supreme Court, we must determine whether *Haeuser I* was subject to our review at that time.

Under circumstances nearly identical to the case at hand, we adopted the United States Supreme Court's analysis in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), for purposes of determining "when a decision of the highest appellate court of Guam is final, although further proceedings on the merits may remain." *EIE Guam Corp. v. The Supreme Court of Guam*, 191 F.3d 1123, 1125 (9th Cir.1999); *Kiaaina v. Jackson*, 851 F.2d 287, 289 (9th Cir.1988)

*re Habib,* 1996 Guam 7, 1996 WL 924521 (Guam). Thereafter, cases from the Superior Court were appealed to the Supreme Court. Decisions by the Supreme Court are subject to review by writ of certiorari to the Ninth Circuit. *See* 48 U.S.C. § 1424–2; 7 Guam Code Ann. § 3107.

(holding that in order to determine when a decision by a Guam court is final for purposes of our review, "we must determine whether the Supreme Court would review [the present case] if it were a judgment from a state court").

■ Ordinarily, the Supreme Court refuses to review a state court judgment "where anything further remains to be determined by a state court." *Cox Broadcasting Corp.*, 420 U.S. at 477, 95 S.Ct. 1029; *Gospel Army v. City of Los Angeles*, 331 U.S. 543, 546, 67 S.Ct. 1428, 91 L.Ed. 1662 (1947) (explaining that "for a judgment of an appellate court to be final and reviewable ... it must end the litigation by fully determining the rights of the parties, so that nothing remains to be done by the trial court *'except the ministerial act of entering the judgment* which the appellate court directed' ") (emphasis added) (quoting *Dep't of Banking, State of Nebraska v. Pink*, 317 U.S. 264, 267, 63 S.Ct. 233, 87 L.Ed. 254 (1942)). The Guam Supreme Court in *Haeuser I* remanded the matter to the Superior Court for findings consistent with its opinion. *See Haeuser I*, 1999 Guam 12 at ¶ 22. Specifically, the Superior Court had to determine whether Haeuser's claim was barred due to failure to mitigate damages in each and every year of his unemployment. Thus, *Haeuser I* did not fully end the litigation.

This court has also adopted *Cox Broadcasting's* holding that there are special circumstances where a departure from this requirement of finality is allowed and an appeal *can* be entertained even though further proceedings are pending in the state courts.[6] Only some of these exceptions apply to our review of the Guam Supreme Court because this court has authority to review "not only federal issues, but also all issues of local law." *EIE Guam Corp.*, 191 F.3d at 1125(citing 48 U.S.C. § 1424–2). Accordingly, in *Kiaaina*, 851 F.2d at 290, we interpreted the *Cox Broadcasting* exceptions in light of our authority to review both federal and local Guam issues and concluded that: "[T]his court will review decisions ... when further proceedings are pending only if policy issues involved are of such importance as to demand immediate review, or declining to entertain the appeal would preclude further review." *Id.*

At the time of *Haeuser I* there were neither policy issues of great importance, nor a chance that a failure to entertain an appeal would preclude further review. Therefore, because none of the *Cox Broadcasting* exceptions to the finality requirement applied, and because *Haeuser I's* remand required the Superior Court to make further determinations, *Haeuser I* was not final for purposes of review by this court. *See Guam v. Manibusan*, 729 F.2d 1236, 1238(9th Cir.1984). Accordingly, we may now review not only the Guam Supreme Court's decision in *Haeuser II*, but also the decision in *Haeuser I. See Coe v. Armour Fertilizer Works*, 237 U.S. 413, 418–19, 35 S.Ct. 625, 59 L.Ed. 1027 (1915) (holding that the United State Supreme Court could review issues resolved in the state supreme court's first decision to remand proceedings despite the plaintiff's

---

**6.** The four exceptions where the Supreme Court of the United States will review the decision as a final judgment without awaiting the completion of additional proceedings in the state courts are:"(1) the federal issue is conclusive or the outcome is preordained; (2) the federal issue will survive the further proceedings and require adjudication; (3) the federal issue has been fully decided and re-

view after remand might be precluded; (4) the federal issue has been fully decided and the case might be decided on non-federal grounds below, but determination of the federal issue would immediately resolve the case and delaying review would erode federal policy." *Kiaaina*, 851 F.2d at 289(citing *Cox Broadcasting Corp.*, 420 U.S. at 479–83, 95 S.Ct. 1029).

failure to appeal that first decision because the judgment did not become final until the case returned to the state supreme court a second time and was affirmed).

## B. Standard of Review

We now determine what standard of review to apply to the Guam Supreme Court's conclusion in *Haeuser I* that the Superior Court clearly erred in its findings of fact. Haeuser argues that we must review the Superior Court's findings of fact for ourselves, citing *Phoenix Engineering and Supply, Inc. v. Universal Electric Co.*, 104 F.3d 1137, 1140(9th Cir. 1997). In *Phoenix Engineering*, we reviewed a conclusion by the Appellate Division that the Superior Court's findings of fact were not clearly erroneous and explained our approach in the following manner:

> As an appellate court, the Appellate Division cannot make findings of fact. Thus, the only manner in which we can determine whether the Superior Court erred in its findings of fact is to review them for clear error. If the Superior Court did not clearly err in its findings of fact, then we must affirm [the Appellate Division's conclusion that the Superior Court's factual findings were not clearly erroneous].

*Id.* at 1140. *See also Oxford Properties & Finance Ltd. v. Engle*, 943 F.2d 1150, 1153 (9th Cir.1991) (holding that when reviewing the Appellate Division's judgment affirming the trial court's conclusions, this Court would "reverse findings of fact only when they are clearly erroneous"). Haeuser thus contends that we must disregard the decision of the Guam Supreme Court and determine for ourselves whether the Superior Court's findings are clearly erroneous. If we do not find clear error, he argues, we must reverse the Guam Supreme Court. We do not agree.

In determining that we must conduct our own clear error review of the Superior Court's factual findings, the *Phoenix Engineering* court stated:

> Final decisions of the *Appellate Division* are reviewed by the United States Court of Appeals for the Ninth Circuit. 48 U.S.C. § 1424–3(c). We have previously concluded that we must apply the *de novo* standard of review to the *Appellate Division's* interpretation of Guam law. *People of Territory of Guam v. Yang*, 850 F.2d 507, 509–511 (9th Cir.1988) (en banc).

*Phoenix Engineering*, 104 F.3d at 1140 (emphasis added). In the case at bar, however, we review not the Appellate Division under 48 U.S.C. § 1424–3, but rather, the Guam Supreme Court under 48 U.S.C. § 1424–2. This change is important. First, in contrast to our de novo review of the Appellate Division, we apply a deferential standard of review to Guam Supreme Court decisions concerning local law. Second, our review under § 1424–2 must take into account Congress' clear intent to allow the Guam Supreme Court to develop Guam's common law. We discuss each of these considerations in turn.

Congress enacted § 1424–1(a) in 1984 to provide that "the legislature of Guam may in its discretion establish an appellate court." *See Gutierrez v. Pangelinan*, 276 F.3d 539, 546 n. 4 (9th Cir.2002). Guam ultimately decided to accept that invitation and shortly thereafter, the Guam Legislature created the Supreme Court of Guam and provided that its justices be appointed by the Governor of Guam and approved by the Guam Legislature. *See* Comment, 7 Guam Code Ann. § 1101; Guam Code Ann. § 3103. In contrast, the Appellate Division was not a "local" Guam court. It was created by federal statute, and its three-judge panel always included one or two judges who were selected from outside

Guam. *See* 48 U.S.C. § 1424–3(b). We emphasized these characteristics of the Appellate Division in *Yang* when we held that we should apply a de novo standard of review to the Appellate Division's interpretations of Guam law. *See Yang*, 850 F.2d at 510 (holding that because two of the three Appellate Division judges are not from Guam, "there is simply no basis for assuming that visiting judges ... have any greater familiarity with local Guam law").

*Yang's* rationale for *not* deferring to the Appellate Division therefore does not apply to our review of the Guam Supreme Court. In *Guam v. Guerrero*, 290 F.3d 1210, 1213–14 (9th Cir.2002), we recognized that when reviewing a decision by a *territorial supreme court* "on matters of local concern, appellate courts apply a highly deferential standard of review." *See also Gutierrez*, 276 F.3d at 546 ("We have adopted a deferential standard of review for Guam Supreme Court decisions examining local law ....") (citing *EIE Guam Corp.*, 191 F.3d at 1127). *Cf. Oxford Properties*, 943 F.2d at 1153 ("On appeal, we review legal determinations of the Appellate Division of the United States District Court for the Territory of Guam de novo, even where the questions concern interpretations of the law of Guam."); *Phoenix Engineering*, 104 F.3d at 1140 (same); *Saludes v. Ramos*, 744 F.2d 992, 993–94 (3rd Cir.1984) (holding that a more deferential standard of review is appropriate only for a "separate, insular judicial system" and is not required where appeals

from the territorial trial court go directly to the federal district court).

■ This deference to the Guam Supreme Court, however, applies only on matters concerning local law.[7] We have defined "local law" as those "decisions that ... develop Guam's common law." *Gutierrez v. Pangelinan*, 276 F.3d 539, 546 (9th Cir.2002); *see also People of the Territory of Guam v. Dela Rosa*, 644 F.2d 1257, 1260 (9th Cir.1981) (defining "matters of purely local law" as those matters "limited to construction of local legislation or to court rulings upon questions dealing with local needs and customs"). Determining the level of diligence necessary to fulfill a duty to mitigate damages similarly deals with questions of local needs and customs. Guam's courts must balance Guam's need to compensate wrongfully terminated workers with concerns that such awards can produce idleness if they are too generously awarded. *See e.g., Nat'l Labor Relations Bd. v. Mercy Peninsula Ambulance Serv., Inc.*, 589 F.2d 1014, 1018 (9th Cir.1979) (holding that giving back pay to those who had been less than reasonably diligent would "run contrary to the purposes of the backpay remedy, encourage idleness and reward slothfulness"). Such a balance cannot be struck without taking into account the unique characteristics of Guam's insular legal market. We accordingly conclude that because the Guam Supreme Court is in a superior position to divine the needs of Guam's economy and of its labor market,

---

**7.** In contrast, we review a territorial supreme court's interpretation of federal law under a de novo standard. *See Guerrero*, 290 F.3d at 1213. As explained *infra*, the question of whether Haeuser was reasonably diligent in mitigating his damages involves the application of local law and not federal law. This is true despite the fact that Haeuser originally contended that Guam's classification of assistant attorneys general violated the Organic

Act, a federal statute. *See Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1091–92 (9th Cir.2002) (holding that plaintiffs failed to state a claim arising under federal law because the success of the plaintiffs' claim depended on a violation of Guam law and though the Organic Act controlled the validity of that law, plaintiffs did not need to plead a violation of the Organic Act itself in order to succeed).

the issue of whether Haeuser made reasonable efforts to mitigate his damages involves the kind of local concern which supports a deferential standard of review.

The federal legislation which authorized Guam to create its own local appellate court, 48 U.S.C. § 1424–2, bolsters the proposition that we give a degree of deference to that court. Section 1424–2 provides in pertinent part:

> [F]or the first fifteen years [8] following the establishment of the appellate court authorized by section 1424–1(a) of this title, the United States Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had. The Judicial Council of the Ninth Circuit shall submit reports to [the Senate and the House] at intervals of five years following the establishment of such appellate court as to whether it has *developed sufficient institutional traditions* to justify direct review by the Supreme Court of the United States....

48 U.S.C. § 1424–2 (emphasis added). Although Congress did not explicitly state that greater deference must be paid to the Guam Supreme Court, the text of § 1424–2 assumes that the Guam Supreme Court will have the freedom to develop its own "traditions," which in turn, undoubtedly entails the creation of legal precedent as well. This court came to a similar conclusion in *Gutierrez* when we stated:

> Under § 1424–2, we have jurisdiction not only over federal issues, but over local issues as well. In exercising this discretionary power of review, it is evident that we must balance the temporary power of oversight that Congress has given us with Congress's clear intent "to allow Guam to develop its own, independent institutions."

*Gutierrez*, 276 F.3d at 546 (internal citations omitted) (citing *EIE Guam Corp.*, 191 F.3d at 1127).

In sum, in so far as the *Phoenix Engineering* court explicitly premised its standard of review on the fact that (1) it was reviewing the Appellate Division pursuant to 48 U.S.C. § 1424–3, and (2) *Yang* demanded that it employ a de novo standard even with respect to decisions interpreting local Guam law, we are not bound by *Phoenix Engineering's* conclusions. Unlike our review of the Appellate Division, our review of the Guam Supreme Court requires us to defer to an insular judicial system's expertise in local matters as well as to honor Congress' assumption that the Supreme Court would have the freedom to develop sufficient legal traditions and precedent. This degree of deference does not allow us to reverse the Guam Supreme Court's decisions on matters of local law unless clear or manifest error is shown. *See De Castro v. Board of Comm'rs of San Juan*, 322 U.S. 451, 458, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944) (holding that "to justify reversal by the federal courts of a decision of an insular supreme court in a matter of local concern, 'the error must be clear or manifest; the interpretation must be inescapably wrong' ") (citing *Bonet v. Texas Co.*, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401 (1940)); *Waialua Agric. Co. v. Christian*, 305 U.S. 91, 109, 59 S.Ct. 21, 83 L.Ed. 60 (1938) (refusing to reverse the territorial supreme court's ruling on local law absent "manifest error").

### C. Mitigation of Damages

According to the Guam Supreme Court, a wrongfully terminated employee in Guam cannot collect back pay unless that employee has fulfilled his duty to mitigate damages. *Haeuser I*, 1999 Guam

---

8. This petition falls within the fifteen year period because the Guam Supreme Court did not yet exist in 1994. *See Gutierrez,* 276 F.3d at 546 n. 4.

12, ¶ 11(citing *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980)). In order to fulfill this duty to mitigate, the terminated employee must make "reasonable efforts" to obtain employment. *Id.* at ¶ 12. The burden of demonstrating that reasonable efforts to find employment were not made rests on the employer, who must show: "a) there were substantially equivalent jobs available during the time in question; b) that the employee could have obtained an equivalent job; c) and the employee failed to use reasonable diligence in seeking one." *Id.* (citing *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir.1995)). Alternatively, an employer is "released from a duty to establish the availability of comparable employment" if the employer can prove "that the employee made no reasonable efforts to seek such employment." [9] *Id.* (citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998)).

Although Guam's courts have not explicitly stated whether mitigation of damages is a question of law or fact, the Supreme Court treated the issue as a question of fact when it stated that it would review the Superior Court's findings on mitigation of damages under a clear error standard.[10] *Id.* at ¶ 14; *see also* Guam R. Civ. Proc. 52(a)(findings of fact shall not be set aside unless clearly erroneous). The Supreme Court then defined the clearly erroneous standard as follows:

If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighted the evidence differently. An appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed.

*Haeuser I,* 1999 Guam 12, ¶ 14 (internal citations omitted).

Haeuser accordingly argues that the Superior Court's finding that he was reasonably diligent in seeking suitable employment is plausible in light of the entire record. The Superior Court found that Haeuser applied for public sector positions on eight separate occasions and also performed a limited amount of court-appointed work. Although Haeuser did not apply for a position in the private sector during his unemployment, the Superior Court concluded, after a four-day trial, that this did not constitute a failure to mitigate damages because it was highly unlikely Haeuser would have been hired. In *Haeuser I* the Guam Supreme Court disagreed and reversed, holding that the Superior Court's finding that Haeuser mitigated his damages, despite his failure to apply to a single private sector position, was "not

**9.** We are not certain whether, in citing to the conflicting mitigation standards from the Second and Ninth Circuit, the Guam Supreme Court intended to create its own, distinct, mitigation rule or to construe our rule in *Odima.* Recognizing that the appropriate mitigation standard is a matter of local law, we will assume, without deciding, that the Guam Supreme Court intended to create and apply its own mitigation standard.

**10.** The Guam Supreme Court's treatment of mitigation of damages as a question of fact is

also in accord with relevant case law. When an issue has not been discussed in any published Guam decision we look to California law, *People of the Territory of Guam v. Quezada*, 905 F.2d 263, 265 (9th Cir.1990), and under California law, the question of whether a wrongfully terminated employee has acted reasonably regarding his duty to mitigate damages is one of fact. *See Boehm v. Am. Broad. Co.*, 929 F.2d 482, 485–86 (9th Cir. 1991).

plausible in light of the entire record." *Id.* at ¶ 22.

■ [12] However, in reaching its conclusion that Haeuser had not mitigated his damages, the Guam Supreme Court noted that it had not "conducted a review of the evidence presented to the trial court." *Id.* at ¶ 20–22. Acknowledging this, it then decided that there was no "evidentiary support for the trial court's conclusion that Haeuser would not have been hired by any private law firm." *Id.* Although we cannot overrule the Supreme Court unless we conclude that its reversal of the Superior Court's factual findings is "inescapably wrong" or involved error that is "clear or manifest," *see De Castro,* 322 U.S. at 458, 64 S.Ct. 1121, we cannot uphold the Supreme Court's decision to reverse the lower court's ultimate factual determinations in the absence of its having reviewed the evidentiary record upon which those determinations are based. Before deciding whether the lower court's finding was plausible, the Supreme Court was required, under the very standard it announced earlier in its opinion, to review "the record . . . in its entirety," and then apply the law to the facts. *See Haeuser I,* 1999 Guam 12, ¶ 14.

Moreover, the Supreme Court's description of the evidence in the record is inconsistent with the evidence actually introduced. The Supreme Court stated that there was no "evidentiary support for the trial court's conclusion that Haeuser would not have been hired by any private law firm." To the contrary, a review of the record establishes that evidence was offered in support of that proposition. One of the hiring partners from the largest private law firm in Guam testified that his firm had never hired an attorney who had been fired from a prior job, and that such applications are weeded out in the firm's screening process. The second hiring partner, the Department's witness, similar-ly testified that the fact that an applicant was suing his former employer "would make [her] a lot more cautious." In addition, the expert from the Guam Civil Service Commission, stated that, in general, termination from the Guam Government was an "economic death sentence." Haeuser also testified that he asked a friend in private practice about employment opportunities, without receiving any encouragement. In light of this evidence as well as the Supreme Court's own admission that it did not review the evidence as presented in trial, we conclude that it was manifest error for the Supreme Court to reverse the Superior Court's findings, made after hearing four days of testimony about the unique circumstances facing lawyers attempting to obtain work in Guam's insular legal market.

Having reversed the Guam Supreme Court's decision in *Haeuser I,* we cannot affirm its decision in *Haeuser II.* The Court's most recent determination that Haeuser was not entitled to any back pay rested on its earlier conclusion that Haeuser had failed to reasonably mitigate damages. *See Haeuser I,* 1999 Guam 12, ¶ 12 & 20–22. Because we conclude that the Guam Supreme Court must reconsider its decision in *Haeuser I* after completing a full review of the record, including the evidence tending to show that Haeuser would have been unable to obtain employment in private practice, its subsequent decision also cannot be upheld.

## III. CONCLUSION

Although we must give deference to the Guam Supreme Court's conclusions regarding matters of local law, we cannot uphold its decision to reverse a lower court's factual findings, where it acknowledges that it did not review the evidence presented *and* where the evidence in the record supporting the lower court's finding

is significant. Under these circumstances, we hold that the Guam Supreme Court's reversal of the Superior Court's findings constituted manifest error.

**REVERSED.**