**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1586
_____

TIMOTHY DEFOE

v.

LENROY PHILLIP,
Petitioner
_____

On Writ of Certiorari to the Supreme Court
of the Virgin Islands
Supreme Court No. VISC-1: 2009-0007

Argued December 4, 2012

Before: SMITH, HARDIMAN, and ROTH,
Circuit Judges

(Filed: December 21, 2012)

1

Joel H. Holt [ARGUED]
Law Offices of Joel H. Holt
2132 Company Street, Suite 2
Christiansted, VI  00820
        *Counsel for Respondent*

Carl A. Beckstedt, III [ARGUED]
Beckstedt & Associates
Suite 2
5025 Anchor Way
Christiansted, VI 00820

Douglas L. Capdeville
Law Offices of Douglas L. Capdeville
2107 Company Street, Lot#4
P.O. Box 224191
Christiansted, VI 00822
        *Counsel for Petitioner*

_____

OPINION

_____


SMITH, *Circuit Judge*.

For over half a century, this Court has been the final interpreter of Virgin Islands law. In that role, we

have made an incalculable number of rulings and have issued hundreds of decisions. But our role changed in 2007 with the founding of the Supreme Court of the Virgin Islands. We must now decide whether and when that nascent Supreme Court may reject our pre-2007 interpretations of Virgin Islands law.[1]

I

Lenroy Phillip and Timothy Defoe worked together at an oil refinery in the United States Virgin Islands. On October 27, 2007, Phillip was driving a company-owned vehicle near the refinery when it struck Defoe. Phillip received a citation from their employer for inattentive driving.

While recovering from his injuries, Defoe filed a claim and received benefits under the Virgin Islands Workers' Compensation Act, 24 V.I. Code § 250 *et seq.* He also sued Phillip for negligence in the Superior Court of the Virgin Islands. The Superior Court granted

---

[1] Pursuant to its congressionally granted authority, the Virgin Islands legislature created the Supreme Court of the Virgin Islands in 2004, *see* 4 V.I. Code § 2, but the Supreme Court did not begin to exercise its judicial authority until January 29, 2007. For convenience, we refer to decisions from before the time it began exercising its authority as pre-2007 decisions.

summary judgment for Phillip. It relied on our decision in *Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004), in which we held that the Workers' Compensation Act prevents injured employees from suing their coworkers. *Id.* at 192 (citing 24 V.I. Code § 284). The Superior Court therefore rejected Defoe's negligence claim.

Defoe appealed to the Supreme Court of the Virgin Islands. The Supreme Court reversed, concluding that the Act's immunity provision does not prevent suits against coworkers. *Defoe v. Phillip*, No. 2009-0007, 2012 WL 37404, at *2 (V.I. Jan. 5, 2012) (per curiam). Before reaching that conclusion, the Supreme Court declared that it was no longer bound by this Court's pre-2007 decisions on Virgin Islands law—even while acknowledging that the Superior Court remains bound by those decisions until the Supreme Court says otherwise. *Id.* at *3–4; *see also People v. Murell*, No. 2011-0074, 2012 WL 2308543, at *6 (V.I. May 15, 2012) (stating that the Supreme Court need not follow two of our precedents on questions of local law). The Supreme Court then rejected our holding in *Tavarez* and remanded to the Superior Court to determine whether Phillip actually was negligent.

Phillip turned to us. We granted Phillip's certiorari petition to decide "[w]hether the Supreme Court of the Virgin Islands has the authority, under 48 U.S.C. § 1613, to disregard precedent set by the Third Circuit Court of

4

Appeals during a time when the Third Circuit Court of Appeals was the only source of binding authority construing territorial law." *See* Order Granting Pet. Writ Cert. at 1, *Defoe v. Phillip*, No. 12-1586 (3d Cir. May 10, 2012) (citing Pet. Writ Cert. at 9). We also directed the parties to address "whether this Court has jurisdiction over the petition pursuant to 48 U.S.C. § 1613." *Id.* Before resolving these questions, a review of the Virgin Islands court system is in order.

II

Congress laid the groundwork for the current Virgin Islands court system nearly sixty years ago. *See generally* Revised Organic Act of 1954, 48 U.S.C. § 1541 *et seq.* The Revised Organic Act enabled the Virgin Islands legislature to create its own court system, including trial courts and an appellate court. *Id.* § 1611(b).

In addition, the Act established the District Court of the Virgin Islands—an Article IV court—and gave it original jurisdiction over local claims. *Id.* §§ 1611(a), 1612(b). It also gave the District Court concurrent jurisdiction over any local crimes that are sufficiently similar to federal crimes. *See Callwood v. Enos*, 230 F.3d 627, 631 (3d Cir. 2000) (citing 48 U.S.C. § 1612 (c)). Until recently, the District Court served as more than a trial court. The Appellate Division of the District Court also heard all appeals from local courts. 48 U.S.C.

§ 1613a(a). In turn, our Court had appellate jurisdiction over appeals from the Appellate Division. *Id.* § 1613a(c). Such review was a matter of right.

Congress changed this system in 1984 by amending the Revised Organic Act. This amendment enabled the Virgin Islands legislature to vest original jurisdiction over local actions exclusively in local courts. *Parrott v. Gov't of U.S. Virgin Islands*, 230 F.3d 615, 619 (3d Cir. 2000) (citing 48 U.S.C. §§ 1611(a), 1612(b)). The Virgin Islands exercised that power, vesting exclusive jurisdiction over local actions in the Territorial Court of the Virgin Islands—now known as the Superior Court of the Virgin Islands. 4 V.I. Code § 2. After this amendment, the District Court continued to hear appeals from local trial courts, and it retained concurrent jurisdiction over local crimes that are similar to federal crimes. *See Callwood*, 230 F.3d at 631.

The next major change came in 2004. Fifty years after receiving authority to do so, the Virgin Islands legislature established its own appellate court—the Supreme Court of the Virgin Islands. *See* 4 V.I. Code § 2. The Supreme Court, composed of three justices, began exercising its judicial authority on January 29, 2007. It handed down its first decision later that year. It continues to hear all appeals from the Superior Court of the Virgin Islands. *See id.* §§ 21(a), 32, 33.

The founding of the Virgin Islands Supreme Court

6

altered the relationship between the federal judiciary and the Virgin Islands court system. Going forward, the District Court of the Virgin Islands no longer has appellate jurisdiction over any local decisions.[2] *See* 48 U.S.C. § 1613a(a) (indicating that the District Court's appellate jurisdiction ends once the Virgin Islands legislature creates its own appellate court). Instead, as set out in 48 U.S.C. § 1613, we have certiorari jurisdiction over the Virgin Islands Supreme Court:

> [F]or the first fifteen years following the establishment of the appellate court authorized by section 1611(a) of this title, the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final

---

[2] On appeal, the District Court still reviews territorial cases that were "pending in [the District Court]" before the establishment of the Supreme Court, and we still hear appeals from those decisions. 48 U.S.C. § 1613a(d) ("The establishment of the appellate court shall not result in the loss of jurisdiction of the district court over any appeal then pending in it. The rulings of the district court on such appeals may be reviewed in the . . . Third Circuit and in the Supreme Court notwithstanding the establishment of the appellate court.").

7

decisions of the highest court of the Virgin Islands from which a decision could be had.

Our certiorari jurisdiction will last for a maximum of fifteen years. After that, the Virgin Islands Supreme Court will have the same role as the highest court of any state—it will be the final authority on Virgin Islands law. The United States Supreme Court will review its decisions on federal law, and we will no longer have appellate jurisdiction over its decisions. In the meantime, we have established rules that govern the process of granting certiorari petitions. *See, e.g.*, Third Circuit Local Appellate Rule 112.1(a) ("Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only when there are special and important reasons therefor.").[3]

The fifteen-year period established by § 1613 is merely a default. The statute requires our Court to submit a report to Congress every five years after the creation of

---

[3] Our local rules provide a list of reasons for granting certiorari petitions. Relevant to this case, we will grant a petition if "[t]he Supreme Court of the Virgin Islands has decided a question in a way that conflicts with applicable decisions of this court." Local Appellate Rule 112.1(1)(a).

8

the Virgin Islands Supreme Court.[4] The purpose of the report is to evaluate "whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all [ ] final decisions." 48 U.S.C. § 1613.

Earlier this year, a committee from the Third Circuit prepared the initial five-year report.[5] *See* Judicial Council of the U.S. Court of Appeals for the Third Circuit, *Report on the Virgin Islands Supreme Court*

---

[4] The relevant language from 48 U.S.C. § 1613 states:

> The Judicial Council of the Third Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Natural Resources of the House of Representatives at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions.

[5] The committee members included Circuit Judge D. Brooks Smith, Senior Circuit Judge Walter Stapleton, and Third Circuit Clerk Marcia Waldron.

9

(2012), *available at* http://www.visupremecourt.org/wfData/files/BookletReportofVirginIslandsSupremeCourt.pdf. The committee reviewed the Supreme Court's decisions, practices, facilities, and day-to-day operations. It concluded "that the Supreme Court of the Virgin Islands 'has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States.'" *Id.* at 17 (quoting 48 U.S.C. § 1613). The committee recommended that Congress eliminate our certiorari jurisdiction. *Id.* Still, Congress must act for that recommendation to take effect.[6] For now, we retain certiorari jurisdiction over final decisions of the Virgin

---

[6] We acknowledge that, based on the committee's recommendation, both houses of Congress recently passed H.R. 6116, a bill to eliminate this Court's interim certiorari jurisdiction over final decisions of the Supreme Court in favor of direct certiorari review by the United States Supreme Court. *See* An Act to Amend the Revised Organic Act of the Virgin Islands, H.R. 6116, 112th Cong. (2012) (passed by the House and the Senate as of December 13, 2012). Because the president has not signed H.R. 6116 as of this opinion's publication, we need not consider its effect on our certiorari jurisdiction over this case. *See I.N.S. v. Chadha*, 462 U.S. 919, 951–52 (1983) (concluding that Congress can exercise legislative power only through bicameralism and presentment).

10

Islands Supreme Court.

## III

We first address the question of appellate jurisdiction. During our interim certiorari period, we have authority to "review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had." 48 U.S.C. § 1613. The question is whether the Virgin Islands Supreme Court's order reversing the Superior Court and remanding for further proceedings satisfied the "final decisions" requirement in § 1613. We conclude that it did.

We recently considered the meaning of the term "final decisions." *See Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011). Under *John*, a decision is final only if it is "'final' within the meaning of the United States Supreme Court's certiorari jurisdiction statute." *Id.* at 415 (citing 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State . . . may be reviewed by the Supreme Court by writ of certiorari . . . .")). In general, a judgment is final under the Supreme Court's certiorari statute only if nothing "further remains to be determined by a State court, no matter how dissociated from the [ ] federal issue that has finally been adjudicated by the highest court of the State." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 477 (1975) (quoting *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 124 (1945)) (quotation marks omitted).

11

Here, the Virgin Islands Supreme Court remanded to the Superior Court, and the Superior Court still needs to decide whether Phillip was negligent. This posture suggests that the Supreme Court's decision was not final.

Yet the definition of a "final decision" is not so absolute. The United States Supreme Court has recognized four exceptions to the finality rule:

> In the first category are those cases in which there are further proceedings—even entire trials—yet to occur in the state courts but where for one reason or another the federal issue is conclusive or the outcome of further proceedings preordained. . . .

> Second, there are cases . . . in which the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings. . . .

> In the third category are those situations where the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case. . . .

12

Lastly, there are those situations where the federal issue has been finally decided in the state courts with further proceedings pending in which the party seeking review here might prevail on the merits on nonfederal grounds, thus rendering unnecessary review of the federal issue by this Court, and where reversal of the state court on the federal issue would be preclusive of any further litigation on the relevant cause of action rather than merely controlling the nature and character of, or determining the admissibility of evidence in, the state proceedings still to come. In these circumstances, if a refusal immediately to review the state court decision might seriously erode federal policy, the Court has entertained and decided the federal issue, which itself has been finally determined by the state courts for purposes of the state litigation.

*Id.* at 479–83. When one of these exceptions applies, the Supreme Court will review a state court's ruling on a federal issue even when additional issues await resolution in the lower courts. In such instances, "immediate rather than delayed review would be the best way to avoid the mischief of economic waste and of delayed justice." *Id.* at 477–78 (quoting *Radio Station WOW*, 326 U.S. at 124)

13

(quotation marks omitted).

We conclude that the *Cox* exceptions apply to the finality requirement in our certiorari statute—albeit with one difference. The Supreme Court reviews state decisions only on questions of federal law. *See* 28 U.S.C. § 1257. By contrast, we review decisions of the Virgin Islands Supreme Court on questions of both federal and local law. *See Pichardo v. V.I. Com'r of Labor*, 613 F.3d 87, 94 (3d Cir. 2010). As a result, we apply the exceptions by examining the federal or local issue that the Supreme Court has decided—again, even though additional issues might await resolution. In effect, we apply the language from *Cox* by replacing the phrase "federal issue" with the phrase "federal or local issue."

According to Phillip, this case fits within the third and fourth exceptions.[7] We disagree—at least with respect to the third exception. If we remand for lack of jurisdiction, we could still review the Supreme Court's decision after the losing party filed another petition. Phillip argues that *res judicata* would prevent us from

---

[7] Phillip argues that Local Appellate Rule 112.1 provides another basis for jurisdiction. But this rule simply states our policy for granting certiorari—it does not create an additional basis for jurisdiction. Only Congress can do that.

14

granting certiorari. This argument is based on a misunderstanding of *res judicata*, which prevents parties from making the same claim in separate actions—not from making the same argument on separate appeals in a single action. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (noting that *res judicata* applies only if there was "a final judgment on the merits in a *prior suit*" (emphasis added)).

That leaves the fourth exception. Subsequent Supreme Court cases have confirmed that the exception applies if three requirements are met: (1) the appellant might prevail at trial on separate grounds; (2) reversing the state court would end the litigation on the claim; and (3) failing to review the decision "might seriously erode federal policy." *Florida v. Thomas*, 532 U.S. 774, 780 (2001); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 55 (1989).

This case meets the first two requirements. Phillip might prevail at trial on separate grounds—for example, the Superior Court might conclude that he was not negligent or that Defoe assumed the risk of injury. And if we reversed the Supreme Court by concluding that *Tavarez* still applies, our decision would effectively reinstate the Superior Court's grant of summary judgment and thus would end the litigation. The question, then, is whether this case meets the third requirement— that is, whether failing to review the Supreme Court's

15

decision "might seriously erode federal policy."

This question requires a case-by-case inquiry. In *Florida v. Thomas*, the United States Supreme Court concluded that a suppression motion did not invoke sufficient "federal policy" concerns. 532 U.S. at 780 ("Here the State can make no claim of serious erosion of federal policy that is not common to all run-of-the-mine decisions suppressing evidence in criminal trials."). By comparison, in *Fort Wayne Books v. Indiana*, the Court concluded that an Indiana case met this requirement because the case held that a specific application of the Indiana Racketeer Influenced and Corrupt Organization statute was unconstitutional. "[A] challenge to the constitutionality of the use of RICO statutes to criminalize patterns of obscenity offenses calls into question the legitimacy of the law enforcement practices of several States, as well as the Federal Government." 489 U.S. at 55. It also pointed out that "[a]djudicating the proper scope of First Amendment protections has often been recognized by this Court as a 'federal policy' that merits application of an exception to the general finality rule." *Id.*

This case also meets the third requirement. Our Court has had a significant role in overseeing the Virgin Islands Supreme Court. *See* 48 U.S.C. § 1613; *Pichardo*, 613 F.3d at 100 n.11 ("[W]e are entrusted with the task of overseeing the development of the Virgin Islands

16

Supreme Court's institutional traditions." (quotation marks omitted)). We have certiorari jurisdiction over the Supreme Court's decisions—both on questions of federal law and on questions of local law. *See Pichardo*, 613 F.3d at 94. And, by law, we are required to submit regular reports to Congress evaluating the Supreme Court's progress. 48 U.S.C. § 1613. Having chosen to invest in us this oversight role by statute, Congress has declared a specific federal policy, the relevant federal policy for *Cox* purposes. We believe that if we failed to review the Supreme Court's *Defoe* decision at this time, we would weaken our oversight role—and in doing so, would seriously erode federal policy. After all, by not reviewing that decision, we would leave the precedential posture of our pre-2007 territorial cases undecided. To prevent such uncertainty—and to avoid shirking our oversight role—we conclude that we have jurisdiction under § 1613.

IV

We now consider whether the Virgin Islands Supreme Court may reject our pre-2007 decisions on local law. Upon its establishment, the Virgin Islands Supreme Court became the final authority on local law— subject to a qualification discussed below. We recognized that the Supreme Court would assume this role even before its creation. *See BA Props. Inc. v. Gov't of U.S. Virgin Islands*, 299 F.3d 207, 212 (3d Cir. 2002)

17

("[The Virgin Islands Supreme Court] would essentially have the final word on the interpretation of local Virgin Islands law."). And we reaffirmed this conclusion five years later when the Virgin Islands legislature actually created the Supreme Court. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 n.3 (3d Cir. 2007) (noting that "[g]oing forward, now that the Virgin Islands has established an insular appellate court [it] will begin developing *indigenous jurisprudence*" (emphasis added)).

As a result, when the District Court faces a novel question of Virgin Islands law, it must predict how the Supreme Court will resolve that question. *Id.* And we must make similar predictions. A few years ago, we interpreted a Virgin Islands statute prohibiting unauthorized individuals from carrying firearms, 14 V.I. Code § 2253(a). Before doing so, we noted "the absence of controlling Virgin Islands precedent." *Gov't of U.S. Virgin Islands v. Lewi*s, 620 F.3d 359, 364 n.5 (3d Cir. 2010). We were "mindful, of course, that the authority to interpret [the statute] lies centrally with the newly created Supreme Court of the Virgin Islands." *Id.* And we confirmed that our decision did not "preclude the Supreme Court of the Virgin Islands from offering its own interpretation." *Id.*

Consequently, our relationship with the Virgin Islands Supreme Court is much like our relationship with

18

other state courts—we generally defer on questions of local law. Such deference is consistent with the text of § 1613, which assumes that the Virgin Islands Supreme Court will have the freedom to create its own "institutional traditions." 48 U.S.C. § 1613 ("The relations between the courts established by the Constitution or laws of the United States and the courts established by local law . . . shall be governed by the laws of the United States pertaining to the relations between the courts of the United States . . . and the courts of the several States in such matters and proceedings.").

But our relationship with the Virgin Islands Supreme Court is different in at least one important respect. We have certiorari jurisdiction over the Virgin Islands Supreme Court. 48 U.S.C. § 1613. And unlike the United States Supreme Court's certiorari statute, § 1613 is not limited to decisions on federal law. We also have the discretion to review the Virgin Islands Supreme Court's decisions on local law. *See Pichardo*, 613 F.3d at 96 (noting that unlike the United States Supreme Court's review of state-court decisions, "[o]ur review is not limited to cases that implicate the United States Constitution or federal law").

Because of this difference, we concluded in *Pichardo* that "[i]t is, subject to our review for manifest error, the role of the Virgin Islands Supreme Court to say what the law of the territory is. We will reverse a

19

decision of the Supreme Court . . . that is based upon territorial law only if it is inescapably wrong." *Id.* at 94. In other words, the Supreme Court has assumed our erstwhile role as the final authority on territorial law, though with an important limitation: its decisions must not be manifestly erroneous or inescapably wrong.

The Ninth Circuit adopted this standard nearly a decade ago. *Haeuser v. Dep't of Law*, 368 F.3d 1091, 1099 (9th Cir. 2004). By statute, the Ninth Circuit once had the same relationship with the Guam Supreme Court as the one we now enjoy with the Virgin Islands Supreme Court.[8] At the time, the Ninth Circuit concluded that it

---

[8] Congress has since removed the Ninth Circuit's certiorari jurisdiction. *See* 48 U.S.C. § 1424-2. But the Ninth Circuit's former jurisdictional statute stated:

> [F]or the first fifteen years following the establishment of the appellate court . . . , the United States Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had. The Judicial Council of the Ninth Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Natural Resources of the House of

Representatives at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions. The United States Court of Appeals for the Ninth Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this subsection.

48 U.S.C. § 1424-2 (2000). This tracks the language from 48 U.S.C. § 1613 (emphasis added to show differences):

[F]or the first fifteen years following the establishment of the appellate court . . . , the United States Court of Appeals for the *Third* Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of *the Virgin Islands* from which a decision could be had. The Judicial Council of the *Third* Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Natural Resources of the House of Representatives at intervals of five years following the establishment of such appellate court as to whether it has

21

would review local decisions of the Guam Supreme Court for manifest error. *Id.* (noting that the "degree of deference" owed to the Guam Supreme Court "does not allow us to reverse the Guam Supreme Court's decisions on matters of local law unless clear or manifest error is shown").

The Ninth Circuit did not create the "manifest error" standard. Instead, the United States Supreme Court first articulated this standard in 1940. The Supreme Court concluded that the First Circuit—which once had a similar role in supervising the Supreme Court of Puerto Rico—should generally defer to local decisions of that territorial court. "For to justify reversal in such cases, the error must be clear or manifest; the interpretation must be inescapably wrong; the decision must be patently erroneous." *Sancho v. Texas Co.*, 308 U.S. 463, 471 (1940).

All of this is settled law. *Pichardo* requires us to affirm the decisions of the Virgin Islands Supreme Court

---

developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions. The United States Court of Appeals for the *Third* Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this section.

22

that are based on territorial law unless those decisions are inescapably wrong. In Phillip's mind, however, this deferential standard does not apply when the Supreme Court disregards one of our pre-2007 decisions on territorial law. Instead, as his argument goes, we should conclude that the Supreme Court is bound to our pronouncements from days gone by.

As for our post-2007 precedents, we have already rejected this argument. We stated in *Lewis* "that the authority to interpret [a Virgin Islands statute] lies centrally with the newly created Supreme Court of the Virgin Islands. We do not mean by our decision today to preclude the Supreme Court of the Virgin Islands from offering its own interpretation of [the statute]." 620 F.3d at 364 n.5 (citation omitted). The Supreme Court may disregard our post-2007 decisions on territorial law— again, as long as the Court does not manifestly err in doing so.[9]

We see no reason to adopt a different standard for our pre-2007 precedents. Section 1613 does not distinguish between cases handed down before and after

---

[9] We should note that the Virgin Islands Supreme Court would not be free to reject our post-2007 decisions on local law if we had overturned a Supreme Court decision for being inescapably wrong.

the Supreme Court's founding, nor do our precedents such as *Pichardo* and *Lewis*. In fact, § 1613 allows the Virgin Islands Supreme Court to develop its own "institutional traditions." This assumes that the Supreme Court "will have the freedom" to create its own "legal precedent." *Pichardo*, 613 F.3d at 98 (quoting *Haeuser*, 368 F.3d at 1099). The Supreme Court would have far less freedom to do so if it remained bound to our pre-2007 cases.

More to the point, courts adopting the precedents of past courts typically have the freedom to overturn those precedents. For example, the Eleventh Circuit branched off from the Fifth Circuit in 1981. Although the Eleventh Circuit relies on pre-1981 Fifth Circuit cases, it is free to overrule them. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981) (en banc) ("The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision."). The Supreme Court of Guam has similarly claimed the authority to reject Ninth Circuit precedents from a time when it provided the final word on local law:

> [T]his Court does not recognize the decisions of the Appellate Division [of the District Court of Guam] as controlling our construction of law. We consider its

24

opinions as precedent that is binding upon the trial courts of Guam, but these decisions, like those of the [Ninth Circuit] Court of Appeals, are considered persuasive authority when we consider an issue. . . . It should be underscored that the creation of the Supreme Court of Guam did not erase pre-existing case law. Precedent that was extant when we became operational continues unless and until we address the issues discussed there.

*Guam v. Quenga*, No. CRA96-005, 1997 WL 460709, at *4 n.4 (Guam May 18, 1997).

We therefore conclude that the Virgin Islands Supreme Court may reject our local decisions that predate its establishment. Of course, just as the Supreme Court of Guam was subject to a manifest-error standard of review during the Ninth Circuit's short-lived certiorari period, the Virgin Islands Supreme Court is subject to the same standard of review during our certiorari period. This standard certainly limits the Supreme Court's freedom to reject our decisions. But it does not force the Supreme Court to follow us in lock-step.

In a last-ditch effort, Phillip contends that Local Appellate Rule 112.1(a)(1) binds the Supreme Court to our pre-2007 local decisions. This rule states that when deciding whether to grant certiorari, we will consider whether "[t]he Supreme Court of the Virgin Islands has

25

decided a question in a way that conflicts with applicable decisions of this court or the United States Supreme Court." According to Phillip, this rule is an assertion that the Supreme Court must follow our pre-2007 precedents. But the rule makes no such assertion—it states that we will consider granting certiorari when the Supreme Court disagrees with us, nothing more.

V

The final question is whether the Supreme Court's decision to reject *Tavarez* was manifestly erroneous. Phillip argues that any disagreement with our precedents meets this standard such that no additional inquiry is necessary. If we reject this absolute rule, Phillip also argues that the Supreme Court's decision to reject *Tavarez* in particular was manifestly erroneous. We reject both arguments.

First, however, we consider what it means for a decision to be manifestly erroneous or inescapably wrong. We have yet to conclude that a decision of the Virgin Islands Supreme Court meets this standard. For its part, the Ninth Circuit only once concluded that a decision of the Supreme Court of Guam was manifestly erroneous. In *Haeuser*, the Ninth Circuit overturned the Guam Supreme Court for failing to apply a rule that it had adopted in the same opinion. 368 F.3d at 1101 ("[T]he Supreme Court was required, under the very standard it announced earlier in its opinion, to review

26

'the record . . . in its entirety,' and then apply the law to the facts.") (quoting *Haeuser v. Dep't of Law*, No. CVA98-009, 1999 WL 257611, at *2 (Guam Apr. 30, 1999)).

According to the United States Supreme Court, to reverse under this standard, "it would not be sufficient if we . . . merely disagreed with that interpretation. Nor would it be enough that the . . . tribunal chose what might seem, on appeal, to be the less reasonable of two possible interpretations." *Sancho*, 308 U.S. at 471. To warrant reversal, then, the Virgin Islands Supreme Court must commit an egregious error—for example, by issuing an opinion with a significant internal inconsistency or by blatantly ignoring the plain text of a statute. More than mere disagreement is necessary.

We refuse to say that any disagreement with our precedents is, without further question, manifestly erroneous. For starters, some issues of local law are within the discretion of the highest court in that jurisdiction. For example, the Virgin Islands Supreme Court has the authority to shape the common law within the Virgin Islands. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 980 (2011) (concluding that it "possesses the inherent power to shape the common law in the Virgin Islands"). It is unclear how its common-law decisions could be inescapably wrong—even those decisions that disagree with our pre-2007 cases—because

27

it has the inherent authority to shape the common law as it deems appropriate.

But the common law is not at issue in this case. We face a question of statutory interpretation, and such questions are more likely to have answers that are either objectively right or objectively wrong. Even so, we cannot say that all disagreements with us must be wrong. After all, we implicitly acknowledge that our precedents are imperfect when we decide to limit or overrule them. *See, e.g.*, *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (en banc) (overruling a sixteen-year-old precedent); *Animal Sci. Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 467–68 & n.6 (3d Cir. 2011) (overruling two Third Circuit precedents that conflicted with Supreme Court case law); *see also Montana v. Hall*, 481 U.S. 400, 408 (1987) (Marshall, J., dissenting) ("We are not infallible, as is evidenced, for example, by the number of cases each Term that are dismissed *after* plenary briefing and oral argument as having been improvidently granted."). And the Supreme Court explicitly acknowledges our imperfections any time it reverses a decision of this Court. *See, e.g*, C*oleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) (per curiam), *rev'g Johnson v. Mechling*, 446 F. App'x 531 (3d Cir. 2011). We therefore reject Phillip's general argument that any disagreement with our pre-2007 cases is necessarily wrong.

28

We turn to Phillip's alternative argument that the Supreme Court manifestly erred when it rejected *Tavarez* in particular. Defoe rejects this argument, but he first contends that we should not consider this question at all. For one thing, Defoe claims that this narrow question is outside the scope of certiorari. We disagree. We granted certiorari to decide whether the Supreme Court "has the authority, under 48 U.S.C. § 1613, to disregard *precedent* set by the Third Circuit . . . ." *See* Order Granting Pet. Writ Cert. at 1, *Defoe*, No. 12-1586 (emphasis added) (citing Pet. Writ Cert. at 9). We interpret the word "precedent" to mean both precedents generally and *Tavarez* in particular. The parties apparently adopted this interpretation, too—both sides addressed the Supreme Court's treatment of *Tavarez* in their briefs.[10]

Next, Defoe claims that the Supreme Court's decision does not conflict with our decision in *Tavarez*. This suggestion is wrong. Defoe points out that the defendant in *Tavarez* was the plaintiff's supervisor, *see* 372 F.3d at 189, whereas Phillip was merely Defoe's

---

[10] In our view, it is significant that our grant of certiorari used the singular form "precedent," not the plural form "precedents." Moreover, the greater includes the lesser, and *Tavarez* certainly is a precedent of our Court. Finally, Defoe is not harmed by our interpretation because we ultimately affirm the Supreme Court.

29

coworker. This factual distinction is of no consequence because *Tavarez* explicitly applies to coworkers as well. *See id.* at 191 (noting that "scrutiny of the plain language . . . fails to reveal any intent by the Virgin Islands' legislature to address whether an injured employee may initiate a civil action against a *co-employee or a supervisor* of the same employer" (emphasis added)). For that reason, the Supreme Court rightly concluded that its decision conflicts with ours. *Defoe*, 2012 WL 37404, at *12 ("We acknowledge that the Superior Court faithfully applied precedent that is binding on it when it granted Phillip's motion for summary judgment based on *Tavarez*.").

That brings us back to Phillip's claim that the Supreme Court erroneously rejected *Tavarez*. In *Tavarez*, we interpreted 24 V.I. Code § 284:

> (a) When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer . . . .

> (b) For the purposes of this section, . . . [t]he 'statutory employer and borrowed servant' doctrine are not recognized in this jurisdiction, and an injured employee may sue any person responsible for his injuries other than the employer named in a certificate of insurance . . . .

30

We concluded that § 284(a) prevents law suits against coworkers, despite the statement in subsection (b) that "an injured employee may sue *any person* responsible for his injuries other than the employer named in a certificate of insurance" (emphasis added). We held that "§ 284(b) alters only the immunity that statutory employers previously enjoyed, subjecting these statutory employers to personal liability if they are not named in the certificate of insurance." *Tavarez*, 372 F.3d at 192.

The statutory canon *ejusdem generis* supports this interpretation. As we concluded in *Tavarez*, "the general term 'any person' in the second sentence of § 284(b) is a reference to the preceding specific terminology discussing statutory employers and borrowed servants." *Id.* This means that the term "any person" does not include coworkers generally. In addition, suits against coworkers might frustrate the purpose of § 284(a) because "an employer would normally indemnify or assume the defense of its employee sued for negligence." *Id.*

In our view, *Tavarez* remains the soundest interpretation of § 284. Even so, to warrant reversal, *Defoe* must be more than simply wrong. It must be inescapably wrong. And the Supreme Court's opinion does not meet this standard. As we recognized in *Tavarez*, the Supreme Court's interpretation is defensible on textual grounds: "[T]he apparent breadth of the term

31

'any person,' combined with the fact that [the defendant] was not personally named in the certificate of insurance, appears to give [that] argument some support." *Id.* at 191.

The analysis in *Defoe* is quite thorough and not obviously flawed. The Supreme Court cited twenty-eight instances where, despite a statutory scheme creating employer immunity, a court has allowed an injured employee to sue a coworker. *See Defoe*, 2012 WL 37404, at \*5 n.6; *see, e.g.*, *Highway Constr. Co. v. Moses*, 483 F.2d 812, 815 (8th Cir. 1973) (interpreting the South Dakota workers' compensation statute and concluding that "[t]he employer's immunity from suit by his employees, however, does not extend to immunize a personally negligent employee from suit by coworkers whom he has injured"). *But see, e.g.*, *Bresnahan v. Barre*, 190 N.E. 815, 817 (Mass. 1934). The *Defoe* opinion does not contain a major internal inconsistency—unlike the decision that the Ninth Circuit reversed in *Haeuser*. *See* 368 F.3d at 1101 (reversing the Guam Supreme Court).

Moreover, it is hard to fault the Supreme Court for not invoking *ejusdem generis*, a canon we use to discover legislative intent. The canon does not apply when the text and structure is sufficiently clear—which often is a close question, as it was in this case. *See Waterfront Comm'n of N.Y. Harbor v. Elizabeth-Newark Shipping, Inc.*, 164 F.3d 177, 184 (3d Cir. 1998) (noting that "[t]he principle of *ejusdem generis* . . . is not a rule of law but merely a

32

useful tool of construction resorted to in ascertaining legislative intent. The rule should not be employed when the intention of the legislature is otherwise evident" (quotation marks and citation omitted)); *Norfolk & W. Ry. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991) ("[*Ejusdem generis*] does not control, however, when the whole context dictates a different conclusion.").

Finally, the Virgin Islands Supreme Court considered the implications of its decision. It noted that if employers fear the costs of indemnifying their employees, they can contractually agree not to provide indemnification. *Defoe*, 2012 WL 37404, at \*11. Although this argument ignores the reality that employers have already entered many contracts based on the assumption that such agreements are unnecessary, it is still a reasonable argument going forward. We therefore conclude that *Defoe* is neither manifestly erroneous nor inescapably wrong.

\* \* \*

The Supreme Court of the Virgin Islands is on the road to *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (requiring federal courts to defer to local courts on issues of local law). We are confident that it will soon reach its destination. For now, we defer to the Supreme Court on questions of local law, subject to a manifest-error standard of review, including with respect to our pre-2007 precedents. Because the Supreme Court did not

33

manifestly err in rejecting *Tavarez*, we will affirm its judgment.

ROTH, *Circuit Judge*, Concurring.

I agree with the Majority that we have jurisdiction of this petition for certiorari and that the Supreme Court of the Virgin Islands has the authority under 48 U.S.C. § 1613 to disregard precedent set by the Third Circuit Court of Appeals during a time when the Third Circuit Court of Appeals was the only source of binding authority construing territorial law. Because the grant of certiorari in this case bears only on the general question and does not speak of any consideration of manifest error in this specific case, I find Section V of the majority opinion to be beyond the scope of the grant of certiorari here. For that reason, I conclude that Section V is not necessary to our response to this petition for certiorari and I do not join in it.

1